IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs February 6, 2001

## THOMAS ANDERSON, JR. v. STATE OF TENNESSEE

**Direct Appeal from the Circuit Court for Williamson County**
**No. 1299-441      Timothy L. Easter, Judge**

_____

**No. M2000-01737-CCA-R3-PC - Filed November 21, 2001**

_____

The petitioner appeals the denial of post-conviction relief from his conviction for theft of property valued less than $1000 but greater than $500, a Class E felony, arguing that the post-conviction court erred in finding that he received effective assistance of trial counsel. After a careful review of the record, we conclude that the petitioner failed to meet his burden of demonstrating ineffective assistance of counsel. Accordingly, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JERRY L. SMITH, J., delivered the opinion of the court, in which JOSEPH M. TIPTON and JOE G. RILEY, JJ., joined.

Judy A. Oxford, Franklin, Tennessee, for the appellant, Thomas Anderson, Jr.

Paul G. Summers, Attorney General and Reporter; Elizabeth T. Ryan, Assistant Attorney General; Ronald L. Davis, District Attorney General; and Derek K. Smith, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTUAL BACKGROUND**

The petitioner, Thomas Anderson, Jr., was indicted with a codefendant, John Nicholas Patton, on one count of automobile burglary and two counts of theft over $1000 for stealing two cameras, cash, and a leather jacket from the automobile. As part of a plea agreement, Patton testified on behalf of the State at the petitioner's trial, relating that the petitioner had given him the cameras to sell at a camera shop, and that he had given the petitioner $100 of the proceeds from the sale. On July 28, 1994, the petitioner was convicted by a Williamson County Circuit Court jury of the lesser-included offense of theft less than $1000 but over $500, a Class E felony. The trial court sentenced him as a Range III, persistent offender to six years in the Department of Correction, imposed an $800

fine, and ordered that he pay $850 in restitution. The petitioner's conviction and sentence were affirmed on direct appeal to this court. See State v. Thomas Anderson, No. 01C01-9504-CC-00103, 1997 WL 781887 (Tenn. Crim. App. Dec. 18, 1997), perm. to appeal denied (Tenn. Dec. 14, 1998).

On December 14, 1999, the petitioner filed a *pro se* petition for post-conviction relief, alleging, *inter alia*, that he was denied the effective assistance of trial counsel. On January 26, 2000, following the appointment of post-conviction counsel, the petitioner filed an amended petition, alleging that his trial counsel was ineffective in three areas: (1) for failing to adequately investigate and present a theory of defense; (2) for failing to effectively cross-examine Patton at trial; and (3) for failing to make an effective closing argument. Specifically, the petitioner alleged that trial counsel should have investigated and presented evidence to show, *inter alia*, that Patton had sold cameras to the same camera store in the past, that he owed the petitioner money from their jointly owned disc jockey business, and that the money the petitioner received from him was in partial payment of that business debt. The petitioner further alleged that trial counsel failed to cross-examine Patton regarding his prior transactions with the camera shop, his conflicting stories to the police, promises made in exchange for his testimony, and whether he had been coerced by the police to implicate the petitioner in the crime. Finally, the petitioner alleged that trial counsel was ineffective for failing to argue Patton's lack of credibility and the lack of evidence to support the conviction in his closing arguments to the jury.

An evidentiary hearing was held on June 1, 2000. The petitioner testified that he was initially represented by another lawyer. Trial counsel took over after he rejected the plea offer that the first lawyer brought him from the State. He said that trial counsel met with him only twice to discuss his case, and that on the several other occasions he attempted to talk with counsel, counsel failed to return his phone calls. He estimated the total time he spent with trial counsel as less than one hour. He acknowledged on cross-examination, however, that he had been able to tell trial counsel everything about his case that he thought he needed to tell him.

The petitioner expressed his dissatisfaction at trial counsel's failure to expose Patton at trial as a liar. He acknowledged that trial counsel had done a "good job" of attacking Patton's credibility, but faulted him for failing to use "all the outlets" at his disposal to show that Patton was not a credible witness. The petitioner's primary complaint was that trial counsel had not explained at trial the petitioner's reason for accepting money from Patton. He said that he had informed trial counsel that Patton told him that he had inherited some cameras from his grandfather and had asked that he drive him to Nashville to sell them. The petitioner said that he explained that Patton owed him money from their disc jockey business and had agreed to share the camera proceeds with him in exchange for the ride and as partial payment of the business debt. He testified that trial counsel had suggested that he attempt to get Patton to admit to these facts in conversation and that he tape-record the conversation but that he had been unable to do so.

The petitioner complained that trial counsel failed to investigate Patton's prior dealings with the camera shop and failed to cross-examine him regarding the money he owed the petitioner, the promises he had been made for his testimony, and whether he had been coerced by the police to

implicate the petitioner in the crimes. On cross-examination, however, the petitioner testified that he was not sure that he had told trial counsel that Patton owed him money. He also acknowledged that trial counsel had been able to bring out Patton's conflicting accounts of the incident, and the fact that his burglary charge had been dismissed as part of his plea agreement.

Brenda Jenkins, the petitioner's long-time girlfriend, testified that she had accompanied the petitioner and Patton to the camera shop in Nashville, where she and the petitioner had waited in the car while Patton conducted his business in the shop. She said she had earlier heard Patton mention that he owed money to the petitioner and had also heard him say that he would pay the petitioner when he went to Nashville. On cross-examination, she testified that she had not heard Patton mention any specific amount of money that he owed. She had not seen Patton with any cameras, neither when he got into the car as they picked him up, nor when he got out to go inside the camera shop.

Trial counsel testified that he was employed with the Twenty-First Judicial District Public Defender's Office and that he had been licensed to practice law since 1976. After graduation from law school, he had worked in private practice for a year and a half before becoming an assistant district attorney. After four and a half years as an assistant district attorney, he had again been in private practice from 1984 until 1992, when he joined the public defender's office. Trial counsel said that his main focus had been criminal law and that he had handled over 10,000 criminal cases in his career.

Trial counsel explained that the petitioner's case was originally assigned to another lawyer with the public defender's office, who handled the initial review date and conducted two extensive interviews with the petitioner. After the petitioner rejected the plea offered by the State, trial counsel was assigned to the case. He reviewed with his colleague her notes of the case and met with the petitioner in person three or four times, including "at least an hour" right before trial, for a total time of over two hours. He also talked with the petitioner by phone once or twice. The fact situation, he said, was fairly simple and did not require much time. He could not recall any time that the petitioner asked to speak with him that he had refused. He said that he and the petitioner had never had any difficulty in communicating with each other and that the petitioner had appeared happy with his representation. The petitioner had not made any complaints to him and had, in fact, later sought his representation on another matter.

Trial counsel testified that he had advised the petitioner against testifying at trial because of his lengthy criminal record. He said that the petitioner did not want to testify and agreed with his defense strategy in the case, which consisted of using Jenkins as a witness on the petitioner's behalf, and attempting to attack Patton's credibility. Trial counsel believed that the first time that the petitioner mentioned that Patton owed him money was after Patton testified, during a break in the trial. On cross-examination, he admitted that the petitioner might have mentioned earlier that Patton owed him money. He was sure, however, that he had not heard any of the details about the debt or the disc jockey business until that day. Trial counsel said that he had not thought it particularly relevant that Patton owed the petitioner money. His belief was that the jury convicted the petitioner

because of the evidence that he had driven Patton to the camera store and shared in the proceeds from the sale, as well as testimony from Patton that he had seen the petitioner wearing a brown jacket similar to the one that had been stolen from the victim's automobile.

Trial counsel testified that, in an attempt to discredit Patton's testimony, he had brought out Patton's prior worthless check convictions, as crimes of dishonesty, on cross-examination. He had also attempted to show that the petitioner was not involved by pointing out that it was Patton who went into the camera store and negotiated the entire sale, while the petitioner waited outside. Trial counsel did not remember the petitioner having told him that Patton had gone to the camera store on prior occasions and said that even if he had, he would not have found that fact particularly relevant to the defense. He said that the petitioner never told him of having heard a police officer say that Patton had been coerced into implicating the petitioner in the crime and that if he had, he would have pursued it at trial.

On June 16, 2000, the post-conviction court entered an order denying the petition for post-conviction relief. With regard to the petitioner's first claim of ineffective assistance, the post-conviction court found that trial counsel adequately communicated and met with the petitioner prior to trial and sufficiently investigated the case to formulate a defense. The court further found that evidence that Patton owed money to the petitioner, even if established, would not have altered the outcome of the case. On the petitioner's second claim of ineffective assistance, the court found that trial counsel "aggressively pursued the credibility issues weighing against Mr. Patton during cross-examination," "studiously exposed" his prior criminal history, "attacked the inconsistencies in statements" he had given the police, and in general "hammered" him regarding his inconsistent statements and "potential coercions by police to implicate the Petitioner." Finally, the post-conviction court found that there was no evidence to support the petitioner's claim that trial counsel was ineffective for making an inadequate closing argument. The court found that trial counsel's closing argument, contrary to the petitioner's allegations, was "laced with references" to Patton's lack of credibility. The court further found that trial counsel effectively argued the jury's role as the sole judges of the credibility of witnesses and "adequately attacked the investigation" of the police department and "the State's agreement it had made with Mr. Patton in exchange for his testimony."

Following the post-conviction court's denial of relief, the petitioner filed a timely appeal to this court, raising the sole issue of whether the post-conviction court erred in finding that he received the effective assistance of trial counsel.

POST-CONVICTION STANDARD OF REVIEW

The petitioner bringing a post-conviction petition bears the burden of proving the allegations asserted in the petition by clear and convincing evidence. See Tenn. Code Ann. § 40-30-210(f). Moreover, the post-conviction court's findings of fact are conclusive on appeal unless the evidence preponderates against the judgment. Tidwell v. State, 922 S.W.2d 497, 500 (Tenn. 1996); Campbell v. State, 904 S.W.2d 594, 596 (Tenn. 1995); Cooper v. State, 849 S.W.2d 744, 746 (Tenn. 1993).

INEFFECTIVE ASSISTANCE OF COUNSEL
A. Standard of Review

We are required to observe the following standard of review in cases alleging ineffective assistance of counsel. When a petitioner seeks post-conviction relief on the basis of ineffective assistance, the petitioner must prove "that (a) the services rendered by trial counsel were deficient and (b) the deficient performance was prejudicial." Powers v. State, 942 S.W.2d 551, 558 (Tenn. Crim. App. 1996). To satisfy the deficient performance prong of this test, the petitioner must establish that the service rendered or the advice given was below "the range of competence demanded of attorneys in criminal cases." Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). Furthermore, to demonstrate the prejudice required, the petitioner must show that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. Strickland v. Washington, 466 U.S. 668, 694, 104 S. Ct. 2052, 2068, 80 L. Ed. 2d 674 (1984). "Because a petitioner must establish both prongs of the test to prevail on a claim of ineffective assistance of counsel, failure to prove either deficient performance or resulting prejudice provides a sufficient basis to deny relief on the claim." Henley v. State, 960 S.W.2d 572, 580 (Tenn. 1997). As a matter of fact, "a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component." Id.

B. Specific Allegations

The petitioner argues on appeal that trial counsel was ineffective for failing to investigate and develop the defense that would have explained why he accepted money from Patton, namely, that Patton owed him money from their disc jockey business. He contends that trial counsel was deficient for failing to investigate and pursue this defense, failing to question Patton about the debt on cross-examination, and failing to argue the defense in closing. The petitioner argues that were it not for these alleged deficiencies in counsel's performance, the outcome of the trial might have been different.

Having reviewed the entire record in this case, including the videotapes of the post-conviction evidentiary hearing and the petitioner's trial, we conclude that the evidence does not support the petitioner's claims of ineffective assistance of counsel. Trial counsel testified at the evidentiary hearing that he met with the petitioner at least three times prior to trial and spoke with him by telephone at least once or twice. In addition, he reviewed with his colleague the notes of her earlier interviews with the petitioner and received and reviewed discovery from the State. He said that the facts were not complicated and that the petitioner agreed with his defense strategy of attacking Patton's credibility. The videotape of the trial reveals that trial counsel cross-examined Patton at length regarding the promises he had been made for his testimony, his prior inconsistent statements to the police, and his prior convictions. The tape further reveals that trial counsel argued Patton's lack of credibility, and the lack of evidence supporting the petitioner's role in the crime, to the jury.

As for the petitioner's claim that trial counsel should have presented evidence that Patton owed him money in order to explain why he shared in the proceeds of the camera, neither trial

counsel nor the petitioner was able to testify with certainty at the evidentiary hearing that the petitioner informed trial counsel of the debt prior to trial. Moreover, trial counsel testified that even if the petitioner had told him that Patton owed him money, he was certain that the petitioner had not given him any of the details that he provided at the evidentiary hearing. Trial counsel also said that he would not have found the mere fact that Patton owed the petitioner money particularly relevant for his defense. This court does not second-guess the strategic and tactical choices made by trial counsel relating to the defense unless those choices are shown to be due to inadequate preparation. See Henley, 960 S.W.2d at 579; Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982). Here, the evidence does not preponderate against the post-conviction court's finding that trial counsel adequately investigated the case, formulated an appropriate defense, effectively cross-examined Patton, and presented an effective closing argument to the jury.

Furthermore, the petitioner failed to demonstrate that, were it not for counsel's alleged deficiencies in performance, the outcome of his trial would have been different. As the post-conviction court observed in its order denying relief, the jury in this case obviously accredited Patton's testimony, in spite of trial counsel's demonstration of the inconsistencies in his prior statements to police, his prior convictions for crimes of dishonesty, and the details of his plea bargain agreement with the State. It is unlikely that evidence that Patton owed the petitioner money for a prior debt would have changed the jury's verdict in this case. Thus, we conclude that the petitioner not only failed to demonstrate that counsel's performance was deficient but also failed to show how any alleged deficiency in counsel's performance prejudiced his case.

## CONCLUSION

After a careful review of the entire record, we conclude that trial counsel provided competent representation in this case, and that the post-conviction court therefore properly dismissed the petition for post-conviction relief. Accordingly, we affirm the judgment of the post-conviction court.

_____
JERRY L. SMITH, JUDGE

-6-