IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs August 15, 2006

**JAMES MATTHEW GRAY v. STATE OF TENNESSEE**

**Direct Appeal from the Criminal Court for Davidson County**
**No. 2002-D-2051     J. Randall Wyatt, Jr., Judge**

_____

**No. M2005-02142-CCA-R3-PC - Filed December 7, 2006**

_____

The petitioner, James Matthew Gray, pled guilty in the Davidson County Criminal Court to a charge of reckless homicide. He was sentenced to twelve years in the Department of Correction as a career offender with a release eligibility of sixty percent. He was originally indicted on two counts: (1) felony murder, and (2) especially aggravated robbery. As part of his plea agreement, he agreed to plead out of range of his offender status. On appeal, he argues that his guilty plea was involuntary and unknowingly entered because he asserts that he received ineffective assistance of counsel. After careful review, we conclude that the petitioner has not met his burden of showing that he received ineffective assistance of counsel by clear and convincing evidence and, further, that he has not shown that his plea was involuntary and unknowing. No grounds for relief exist, and the judgment of the post-conviction court is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which ALAN E. GLENN, J., and J. S. (STEVE) DANIEL, SR. J., joined.

Jefre S. Goldtrap, Nashville, Tennessee, for the appellant, James Matthew Gray.

Paul G. Summers, Attorney General and Reporter; Leslie E. Price, Assistant Attorney General; Victor S. (Torry) Johnson, III, District Attorney General; and Lisa Naylor, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

Facts and Procedural History

During the guilty plea hearing, the prosecution offered the following statement of proof regarding the underlying offenses in this matter:

The proof in this case would show that, on August tenth of two-thousand-and-two, a robbery and shooting took place at a fruit stand located on Old -- on -- Lebanon Road, near Old Hickory Boulevard, in Hermitage.

The victim was Alpheus T. Hinton, the Third, who was sort of manning that fruit stand.

The proof would further show that there were two other co-defendants, along with Mr. Gray, originally Misty Sidicaine and Heidi Smiley. They have already pled guilty.

The proof would show that Mr. Gray drove Ms. Sidicaine and Ms. Smiley to the fruit stand. He remained in the car. One of the women had previously had some dealings with Mr. Hinton and knew that he often kept a large amount of money in his truck at the fruit stand.

She was armed with a firearm. She went to Mr. Hinton and demanded money. He refused to give her any. She produced the gun. At that point the gun was either shot into the air or into the trunk of a car.

After that Mr. Hinton, the victim in this case, began to struggle with Ms. Sidicaine, in order to get the gun. Ms. Smiley was present during all of this.

During that altercation and during that struggle, Mr. Hinton was shot; and he died approximately two days later from that gunshot wound.

The women then returned to the vehicle, where Mr. Gray was waiting; and they drove away.

They were stopped by a police officer, who was unaware of what had just occurred. Mr. Gray didn't have a driver's license, but he allowed them to go on.

The victim was able to stumble to a nearby pay phone and call Nine-One-One and give a description of the car, as well as who had shot him.

The officer then realized, when he heard on dispatch, that that was the car he had just stopped. So, he found it a short time later. In the car they found the murder weapon.

As I noted, Ms. Sidicaine and Ms. Smiley previously pleaded guilty. They did agree, as part of their plea agreement, to testify against Mr. Gray, should that become necessary.

They would testify -- Mr. Gray disagrees with this very strongly -- but they would testify for the State that, in the hotel room that they were staying in prior to this happening, they all agreed that they needed money; that Ms. Sidicaine knew, again, that Mr. Hinton often had cash; that Mr. Gray gave them a weapon and told them to be sure that they came back with money, that this was not just a dry run.

Based on these facts, the State's proof at trial would've been that Mr. Gray was aware that this was going to be a robbery and that the murder incurred (sic) during the struggle during that robbery.

I would also note for the record that the victim's family in this case -- we have discussed this resolution with them, and they are aware of it.

At the post-conviction hearing, the petitioner's trial counsel testified that he represented the petitioner beginning some time between General Sessions Court and the Criminal Court indictment and that he was employed as the public defender. Counsel said that the petitioner was originally charged with felony murder and especially aggravated robbery and that he negotiated a plea agreement to reckless homicide. He recalled there were two co-defendants charged along with the petitioner and that he investigated the co-defendants, their statements, and the factual issues about the case. Counsel recalled that either he or someone in his office met with the petitioner numerous times to discuss the investigation of the case. He recalled that the petitioner had some prior misdemeanor convictions but had no felony convictions though the eventual plea agreement called for him to plead as a career offender. He said that he met with the petitioner to explain the offer to him and that they met at least once at the jail and once at the courthouse. He recalled explaining the sentencing ranges to the petitioner and where the petitioner would fall in those ranges. He said they probably explained to the petitioner that the law allowed a negotiated plea that was out of range. He said the petitioner was unhappy about the offer but felt it was more attractive than some of the possibilities at trial. He said his advice would have been to accept the agreement, because the petitioner was at great risk if he went to trial. He wanted the petitioner to understand that they could easily lose at trial.

Counsel did not recall any communication problems with the petitioner but did testify that he often had to explain concepts to him several times before he felt the petitioner understood. He said he believed the petitioner knew he would not have a thirty percent release eligibility and he did not recall the petitioner saying to the court that his agreement would be at thirty percent or Range I. He said he believed the petitioner entered his plea knowingly to the extent that the petitioner understood what they were doing. He said the petitioner knew what the release eligibility percentage meant in terms of years and time to serve.

On cross-examination, counsel testified that he was the Public Defender for Davidson County and that he had held that office since November 1999. He said the petitioner's case was initially assigned to a different attorney in his office. Counsel explained that he took over the case after that attorney left his position to work as a federal public defender. Counsel estimated that he had the case

for a year and a half and that he was assisted by other attorneys in his office in preparation for trial. He said he had practiced law for twenty-nine years with a primary basis in criminal law and estimated that he had handled hundreds of serious crime cases.

He recalled that the District Attorney made an open file discovery to him, and he reviewed all the discovery with the petitioner. He said he met with the petitioner multiple times in preparation for the trial. He said both co-defendants implicated the petitioner in their statements and both would have testified that the petitioner insisted that they made sure to get cash from the victim. The petitioner's statements to police placed him on the scene in the sense that he drove the co-defendants both to and from the location of the crime. He said that he knew the petitioner was a Range I offender and that he explained to him what it meant to plead out of range. He explained to him his possible exposure as to each count of the underlying indictment. He explained that consecutive sentencing was an unlikely possibility.

Counsel testified that defendants charged with a serious crime plead close to trial. He said that the petitioner was unhappy about going to prison because he had difficulty understanding that he could be held responsible for the homicide resulting from the underlying felony. He said he believed the petitioner understood the nature of his guilty plea and that the petitioner's actual sentence, twelve years at sixty percent, was clear from the record. Counsel said he reviewed the plea petition with the petitioner.

The petitioner testified that he and his counsel did not discuss the case thoroughly. He said he did not understand counsel's explanation and he felt that counsel was trying to rush him into a plea. He said he told counsel that he wanted to go to trial. He said that, if he was convicted, he felt he would have received a twenty-five-year sentence. He also testified that he knew a life sentence carried a release eligibility of fifty-one years.

He maintained that counsel tried to rush him into entering a guilty plea. He said he had questions to ask in front of the judge, but he did not think the judge wanted to hear him. He acknowledged that counsel reviewed the discovery with him, including the co-defendants' statements. He said counsel did not tell him that it is the jury's responsibility to weigh the statements of witnesses and determine if they were truthful. He testified that he understood the jury made the decision about the witnesses' truthfulness. He said that he did not enter his plea voluntarily.

On cross-examination, the petitioner said the judge told him he could go to trial but counsel told him he did not need to do go to trial. His counsel encouraged him to take the plea rather than go to trial and face a possible life sentence. He acknowledged that both co-defendants implicated him as the driver and that they both gave statements implicating him in the crime. He claimed that, if he pled guilty, he did not think he would receive a twelve-year sentence at sixty percent and that the percentage was not explained to him.

On redirect examination, he testified that his real concern was the sixty percent release eligibility and that he would be happy if the court was able to alter that percentage.

<u>Analysis</u>

Initially, we note that the petitioner was late in filing his notice of appeal. The post-conviction court's final order denying relief was entered July 13, 2005, but the petitioner did not file a notice of appeal until August 31, 2005. A notice of appeal must be filed within 30 days from the date of entry of the judgment. Tenn. R. App. P. 4(a). However, in the interest of justice, we will review the petitioner's appeal on the merits despite the fact that no explanation was given for the late filing of the notice of appeal.

The petitioner argues that his guilty plea in the underlying case was not knowingly or voluntarily entered because he claims that he received ineffective assistance of counsel. Specifically, he contends that counsel failed to explain to him the range of punishment and its impact on his release eligibility date. He avers that, without this information, his plea could not have been knowing and voluntary. The State argues that the petitioner knew what he was doing and that, based on the evidence of the petitioner's guilt and his significantly reduced sentence, it is unlikely the petitioner would have gone to trial. The State contends that the petitioner failed to show that counsel's performance was deficient or that he was prejudiced by counsel's performance.

Since the petitioner alleged ineffective assistance of counsel, it was the petitioner's burden in the post-conviction court to prove the allegations by clear and convincing evidence in order to get relief. T.C.A. § 40-30-110(f). We are required to affirm the post-conviction court's findings unless the petitioner proves that the evidence preponderates against those findings. <u>State v. Burns</u>, 6 S.W.3d 453, 461 (Tenn.1999).

In order to prove ineffective assistance of counsel, the petitioner must prove that: (1) counsel's performance was deficient, and (2) the deficiency was prejudicial in terms of rendering a reasonable probability that the result of the trial was unreliable or that the proceedings were fundamentally unfair. <u>Strickland v. Washington</u>, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984). The Tennessee Supreme Court has also applied this standard to the right to trial counsel under Article I, Section 9 of the Tennessee Constitution, <u>State v. Melson</u>, 772 S.W.2d 417, 419 n.2 (Tenn.1989), and to the right to counsel on direct appeal under the Fourteenth Amendment. <u>Campbell v. State</u>, 904 S.W.2d 594, 596 (Tenn. 1995).

In <u>Hill v. Lockhart</u>, 474 U.S. 52, 106 S. Ct. 366 (1985), the Supreme Court applied the two-part <u>Strickland</u> standard to ineffective assistance of counsel claims arising out of a guilty plea. The Court in <u>Hill</u> modified the prejudice requirement by requiring a petitioner to show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. 474 U.S. at 59, 106 S. Ct. at 370; <u>Nichols v. State</u>, 90 S.W.3d 576, 587 (Tenn. 2002).

Here, the petitioner has not shown that counsel's performance was deficient. He presents only his own testimony that counsel did not explain to him the significance of entering a guilty plea outside of the normal sentencing range. The post-conviction court found that the petitioner was

adequately informed by his counsel of the consequences of pleading guilty and the likelihood of being convicted if he chose to proceed to trial. The post-conviction court also found that the petitioner was informed of the constitutional rights he would waive by pleading guilty and that, by the petitioner's own admission at the entry of his plea, no one was forcing him to enter into the guilty plea.

Upon review, an appellate court will not reweigh or reevaluate the evidence below; all questions concerning the credibility of witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved by the trial judge, not the appellate courts. Momon v. State, 18 S.W.3d 152, 156 (Tenn.1999). The post-conviction court's findings of fact on a petition for post-conviction relief are afforded the weight of a jury verdict and are conclusive on appeal unless the evidence preponderates against those findings. Momon, 18 S.W.3d at 156; Henley v. State, 960 S.W.2d 572, 578 (Tenn.1997). The court's application of the law to the facts, however, is reviewed de novo without any presumption of correctness. State v. Burns, 6 S.W.3d 453, 461 (Tenn.1999). Post-conviction relief may only be given if a conviction or sentence is void or voidable because of a violation of a constitutional right. T.C.A. § 40-30-103.

After careful review, we conclude that the petitioner has not met his burden of proving that counsel's performance was deficient by clear and convincing evidence. Further, he has not shown that he would have insisted on going to trial if he had been counseled differently. The petitioner's main contention on appeal deals with his displeasure at being required to serve at least sixty percent of the imposed twelve-year sentence. The petitioner clearly made a voluntary and intelligent choice among all the alternatives available to him at the time he entered his plea. He chose to take the offer of serving at least seven years instead of taking a chance on serving fifty-one years before becoming eligible for parole. The post-conviction court found, and we agree, that the petitioner pled guilty to avoid receiving a much greater penalty at trial had he been convicted of felony murder and especially aggravated robbery. He has offered no proof to show that he would have preferred to go to trial. The petitioner has proved neither that his plea was involuntary and unknowing nor that he received ineffective assistance of counsel. We affirm the decision of the post-conviction court.

### Conclusion

Based on the foregoing and the record as a whole, we affirm the denial of post-conviction relief by the post-conviction court.

_____
JOHN EVERETT WILLIAMS, JUDGE